COURT OF CHANCERY
OF THE
STATE OF DELAWARE

SAM GLASSCOCK III
VICE CHANCELLOR

COURT OF CHANCERY COURTHOUSE
34 THE CIRCLE
GEORGETOWN, DELAWARE 19947

Date Submitted: February 10, 2015
Date Decided: May 19, 2015

Stephen E. Jenkins, Esquire
Catherine A. Gaul, Esquire
Peter H. Kyle, Esquire
Ashby & Geddes
500 Delaware Avenue, 8th Floor
P.O. Box 1150
Wilmington, DE 19899

Robert S. Saunders, Esquire
Nicole A. DiSalvo, Esquire
Ronald N. Brown, III, Esquire
Matthew P. Majarian, Esquire
Skadden, Arps, Slate, Meagher & Flom LLP
One Rodney Square
P.O. Box 636
Wilmington, DE 19899

Re:    *Brevan Howard Credit Catalyst Master Fund Limited, et al. v.
       Spanish Broadcasting System, Inc.*,
       Civil Action No. 9209-VCG

Dear Counsel:

This is the latest judicial iteration of rights of holders of preferred stock in Spanish Broadcasting System, Inc. ("SBS"). In their Complaint, the Plaintiffs allege two different sets of contractual rights for which they seek vindication. Those alleged in Count III involve repurchase rights under the applicable "Certificate of Designations Setting Forth the Voting Power, Preferences and Relative, Participating, Optional and Other Special Rights and Qualifications, Limitations and Restrictions of the 10 ¾% Series B Cumulative Exchangeable, Redeemable Preferred Stock" of SBS (the "Certificate"). Those rights were the subject of a previous opinion in this matter denying a motion to dismiss brought by

the Defendant.[1]    The remainder of the Complaint deals with certain rights of the Plaintiffs, as holders of 10 ¾% Series B Cumulative Exchangeable Redeemable Preferred Stock (the "Series B Preferred Stock;" I refer to the holders of such stock as the "Series B Preferred Stockholders"). The rights at issue arise upon the happening of a Voting Rights Triggering Event ("VRTE") under the terms of the Certificate. According to the Plaintiffs, "[a] VRTE has been in effect since at least April 15, 2010 when the dividends due July 15, 2009 had been in arrears and unpaid for four consecutive quarterly dividend periods."[2] Under the terms of the Certificate, SBS was contractually bound not to incur "Indebtedness," a defined term in the Certificate, while a VRTE was in effect. The parties dispute whether the failure to pay dividends as described above was a VRTE under the terms of the Certificate. During the alleged VRTE, the Company incurred debt and the Plaintiffs seek contract damages.

SBS has moved to dismiss on a number of grounds. This Letter Opinion will address only one: the Defendant's argument that these Plaintiffs are prevented from litigating issues decided against those in privity with the plaintiffs in a prior decision. The Defendant points to a case involving the precise VRTE allegations made here, which I decided during the pendency of this action: *Lehman Brothers*

---

[1] *Brevan Howard Credit Catalyst Master Fund Ltd. v. Spanish Broad. Sys., Inc.*, 2014 WL 2943570 (Del. Ch. June 27, 2014) (*Brevan Howard I*).
[2] Am. Compl. ¶ 45.

2

*Holdings, Inc. v. Spanish Broadcasting System, Inc.*[3] In that case, I found that the Series B Preferred Stockholders had acquiesced in the incurrence of debt allegedly in breach of the Certificate, and therefore could not recover damages in connection with such breach.[4] SBS argues, correctly in my view, that the *Lehman Brothers* decision is binding on the Plaintiffs here. The plaintiffs in *Lehman Brothers*, like the Plaintiffs here, were Series B Preferred Stockholders in SBS, and made the identical argument that the Plaintiffs make here: that non-payment of dividends led to the occurrence of a VRTE in 2010, after which SBS incurred debt in violation of the Series B Preferred Stockholders' contractual rights. Because the plaintiffs in *Lehman Brothers* and the Plaintiffs here (or their predecessors) were situated identically for purposes of my analysis of acquiescence in that prior opinion, principles of issue preclusion—*res judicata* or collateral estoppel—prevent the Plaintiffs from relitigating these issues.[5] Thus, Plaintiffs' Count I (seeking a declaration of the existence of a VRTE), Count II (alleging breach of

---

[3] 2014 WL 718430 (Del. Ch. Feb. 25, 2014) *aff'd,* 105 A.3d 989 (Del. 2014). Consideration of the Defendant's Motion to Dismiss Counts I, II, and IV was stayed pending the Supreme Court's consideration of the appeal in *Lehman Brothers*.

[4] *Lehman Bros.*, 2014 WL 718430, at *9–*13.

[5] Whether the theory is framed as *res judicata* or collateral estoppel, the outcome would be the same in this case. If *res judicata* applies, then the Plaintiffs here are barred from relitigating Counts I, II, and IV because of the final judgment in *Lehman Brothers*. If collateral estoppel applies, then the Plaintiffs are barred from relitigating the issue of acquiescence, which results in a dismissal of Counts I, II, and IV. *See M.G. Bancorporation, Inc. v. Le Beau*, 737 A.2d 513, 520 (Del. 1999) ("Collateral estoppel and res judicata are related principles of law. Res judicata bars a suit involving the same parties based on the same cause of action. Collateral estoppel prohibits a party from relitigating a factual issue that was adjudicated previously." (internal citations omitted)).

contract for the incurrence of indebtedness during a period in which a VRTE was in effect) and Count IV (alleging that the contractual language regarding triggering of a VRTE should be read in the Plaintiffs' favor by applying the covenant of good faith and fair dealing) are dismissed. As set out in *Brevan Howard I*, Count III involving SBS's obligation to repurchase stock remains for litigation.[6] What follows is the briefest adumbration of the facts and legal reasoning involved; interested readers are referred to the opinions in *Brevan Howard I* and *Lehman Brothers* for their statements of facts and discussions of the issues.

The Plaintiffs argue that acquiescence is an affirmative defense and, therefore, should await a developed record on which I can evaluate whether SBS has met its burden of proof with respect to the defense. But the Defendant's argument is not acquiescence, as such. The argument is that issue preclusion, based on my findings in *Lehman Brothers*, prevents relitigation of the issues here, and that there is nothing to distinguish these Plaintiffs from the situation of the plaintiffs in *Lehman Brothers* with respect to acquiescence. Acquiescence is a doctrine focused on the *Defendant* and *its* understanding that complained-of acts were acquiesced in; here, that doctrine is considered in light of the uncontested fact that *no Series B Preferred Stockholder* (including these Plaintiffs or their

---

[6] *Brevan Howard I*, 2014 WL 2943570, at *6–*8.

predecessors, as well as the plaintiffs in *Lehman Brothers*) objected to the Defendant incurring debt during a purported VRTE.

In *Lehman Brothers*, I found acquiescence supported by nine factors; those factors, with their applicability to the present case noted below, are as follows:

(1) The Plaintiffs [*there, like the Plaintiffs (or their predecessors) here*], in purchasing the Series B Preferred Stock, were investing in equity akin to debt instruments, the salient feature of which was the payment of quarterly dividends; (2) the Certificate's language, at least in the Plaintiffs' view [*there, as well as that of the Plaintiffs here*], required the Company to refrain from incurring four consecutive quarters of arrearages, or trigger a VRTE, which would provide the Plaintiffs a right to place directors on the Board as well as prevent additional incurrence of debt; (3) the Plaintiffs [*there, like the Plaintiffs (or their predecessors) here*] should have known both that dividends were payable quarterly and that they had not received all quarterly dividend payments, commencing May 9, 2009; (4) thereafter, the Plaintiffs [*there, like the Plaintiffs (or their predecessors) here*] should have known (under their reading of the Certificate) that a VRTE was in effect as of April or July of 2010; (5) the Plaintiffs [*there, like the Plaintiffs (or their predecessors) here,*] [had actual or imputed] knowledge of SBS's intent to enter into the debt transactions in August 2011 and February 2012; (6) despite notice of all of these facts, the Plaintiffs [*there, like the Plaintiffs (or their predecessors) here*] did nothing, leading SBS to believe that the Plaintiffs acquiesced in the debt transactions; (7) that belief was reasonable, and thus foreseeable to the Plaintiffs [*there, like the Plaintiffs (or their predecessors) here*], particularly in light of (a) the mechanism to fill board seats implemented in the Certificate whereby SBS would expect preferred stockholders with a large position in SBS (such as the Plaintiffs [*there*]) to request the Company hold a Special Meeting upon the occurrence of a VRTE, (b) the facially ambiguous language of the VRTE provision, and (c) the fact that those debt transactions the Plaintiffs [*there, like the Plaintiffs here*] now challenge did at the time they were incurred confer on the Plaintiffs [*there, like the Plaintiffs (or their predecessors) here*], as equity holders in the Company, a benefit which at that time they were

5

apparently content to accept; (8) SBS entered into the debt transactions in reliance on the Plaintiffs' acquiescence [*including that of the Plaintiffs (or their predecessors) here*]; and (9) should the Plaintiffs [*here, like the Plaintiffs there*] be permitted to pursue damages [], such reliance will prove detrimental to SBS since [with notice, SBS could have avoided damages].[7]

The question of whether SBS's Series B Preferred Stockholders acquiesced in the debt transactions was vigorously and ably litigated in *Lehman Brothers*.[8] Whether proceeding under the doctrine of *res judicata*[9] or collateral estoppel,[10] the only issue in applying the findings above to the Plaintiffs here is whether they are in privity with the *Lehman Brothers* plaintiffs.[11] The Plaintiffs here do not argue that

---

[7] *Lehman Bros.*, 2014 WL 718430, at *12. I note that our Supreme Court's subsequent decision in *Klaassen v. Allegro Dev. Corp.*, 106 A.3d 1035 (Del. 2014), appears to have rendered some of these factors superfluous to an acquiescence analysis.

[8] The Plaintiffs allege that they cannot be bound by the decision in *Lehman Brothers* because the Defendant failed to seek consolidation of this action with that matter when it was pending. I find this argument unavailing. I do not find that the Defendant has made a "clear and unequivocal waiver" of the right to assert *res judicata* as a defense. *See Glaser v. Norris*, 1992 WL 14960, at *16 (Del. Ch. Jan. 6, 1992) ("Although a party may waive his right to assert a *res judicata* defense, . . . the waiver must be clear and unequivocal.").

[9] *Dover Historical Soc., Inc. v. City of Dover Planning Comm'n*, 902 A.2d 1084, 1092 (Del. 2006) ("*Res judicata* operates to bar a claim where the following five-part test is satisfied: (1) the original court had jurisdiction over the subject matter and the parties; (2) the parties to the original action were the same as those parties, or in privity, in the case at bar; (3) the original cause of action or the issues decided was the same as the case at bar; (4) the issues in the prior action must have been decided adversely to the appellants in the case at bar; and (5) the decree in the prior action was a final decree.").

[10] *See M.G. Bancorporation*, 737 A.2d at 520 ("The test for applying the collateral estoppel doctrine requires that (1) a question of fact essential to the judgment (2) be litigated and (3) determined (4) by a valid and final judgment.").

[11] *See Kohls v. Kenetech Corp.*, 791 A.2d 763, 767 (Del. Ch. 2000) *aff'd*, 794 A.2d 1160 (Del. 2002) ("There are, however, significant differences between the two doctrines. Under the doctrine of res judicata, a judgment in a prior suit involving the same parties, *or persons in privity with them*, bars a second suit on the same cause of action. Under the doctrine of collateral estoppel, on the other hand, a judgment in a prior suit does not operate to bar a subsequent cause of action but rather precludes the relitigation of a factual issue which was litigated and decided in

the factors above have not been conclusively decided against other Series B Preferred Stockholders. Nor do they contest that, under modern principles of issue preclusion, those litigants sufficiently closely situated with the *Lehman Brothers* plaintiffs are deemed in privity with, and should be bound by, the earlier decision, because those with identical interests have already litigated the issues.[12] They argue, however, that they are not in privity with those plaintiff-stockholders and thus not bound by my decision in *Lehman Brothers*.

The Plaintiffs first cite this Court's decision in *Kohls v. Kenetech* for the proposition that privity does not inure to all those within a class of stockholders,[13] and that, therefore, the holding in *Lehman Brothers* does not apply to them. It is true that the Court in *Kohls* applied a narrow, contractual view of privity, as opposed to the identity-of-interests view adopted in more recent cases,[14] and that it specifically concluded that a status as fellow stockholders "is plainly not the type of legal relationship" demonstrating that narrow view of privity, requiring as it does that "a non-party [have] a specific type of pre-existing relationship with a named party, such as bailor and bailee, predecessor and successor or indemnitor

---

[the prior suit between the same parties *or persons in privity with them*." (emphasis added) (quoting *Foltz v. Pullman, Inc.*, 319 A.2d 38, 40 (Del. Super. 1974)).

[12] *See* Pls.' Answering Br. in Opp'n to Def.'s Mot. to Dismiss at 11 (citing *Aveta, Inc. v. Cavallieri*, 23 A. 3d 157, 180 (Del. Ch. 2010) ("Privity is . . . a legal determination for the trial court with regard to whether the relationship between the parties is sufficiently close to support preclusion.") (internal quotation marks omitted)).

[13] *Id.* at 11–12 (citing *Kohls*, 791 A.2d at 769).

[14] *See, e.g., Aveta*, 23 A.3d at 180 ("Parties are in privity for *res judicata* when their interests are identical or closely aligned such that they were adequately represented in the first suit.").

7

and indemnitee."[15] *Kohls* should give no comfort to the Plaintiffs, however. As I read *Kohls*, it places a pleading burden on these Series B Preferred Stockholders to enunciate why they are situated differently from those Series B Preferred Stockholders who were parties in *Lehman Brothers*, or, under principles of *stare decisis*, face dismissal for failure to state a claim.[16] As discussed below, the Plaintiffs fail to allege meaningful dissimilarity from the *Lehman Brothers* plaintiffs, either for purposes of issue preclusion or under a *Kohls*-type analysis.

In an attempt to differentiate their position from that of the plaintiffs in *Lehman Brothers*, the Plaintiffs here first point to factor 7(a) in my *Lehman Brothers* findings, set out above. That factor refers to the Defendant's reasonable reliance on, *inter alia,* the fact that large stockholders did not assert the right to a special meeting, at which all Series B Preferred Stockholders during the existence of a VRTE could have pursued directorships under the Certificate. But that point goes to *SBS's* state of mind and reasonable reliance, *not* the position of the Plaintiffs. In other words, all Series B Preferred Stockholders knew certain rights were created in the Certificate that would likely be exercised if the VRTE occurred, and that among these rights was a right conferred upon those Series B Preferred Stockholders with a more-than-ten percent position in SBS—they could demand a special election. All Series B Preferred Stockholders, in light of that

---

[15] *Kohls*, 791 A.2d at 769.
[16] *Id.* at 770–72.

understanding and despite having notice that SBS was to incur debt, failed to exercise their rights under the Certificate or even give notice of objection to SBS's board. In that circumstance, all Series B Preferred Stockholders, and not just those with an interest greater than ten percent, acquiesced in the transaction.

Next, the Plaintiffs point out that some of their shares were acquired after the debt was incurred, and that they should at least be able to take discovery about the state of mind of their predecessors, assuming those predecessors can be identified.[17] For that reason, they ask that the Motion to Dismiss be denied. The problem with that assertion, again, is that acquiescence is focused on the understanding of the *Defendant*.[18] The record is clear that the Plaintiffs and their predecessors, owners of Series B Preferred Stock at the time the complained-of debt was incurred, had actual or constructive notice that SBS intended to acquire the debt, and stood silent. Their intent in so doing is not pertinent here.[19]

---

[17] I note that it is unlikely that the predecessors could be identified, since it is likely that these shares were acquired from record owners who were not the beneficial owners, and who held shares in fungible bulk. However, I do not rely on this fact in reaching my decision.

[18] Our Supreme Court has recently summarized that acquiescence in a complained-of act is present where:

> [A claimant has] full knowledge of his rights and the material facts and (1) remains inactive for a considerable time; or (2) freely does what amounts to recognition of the complained of act; or (3) acts in a manner inconsistent with the subsequent repudiation, *which leads the other party to believe the act has been approved.* For the defense of acquiescence to apply, conscious intent to approve the act is not required, nor is a change of position or resulting prejudice.

*Klaassen v. Allegro Dev. Corp.,* 106 A.3d 1035, 1047 (Del. 2014) (emphasis added) (internal citations and quotation marks omitted).

[19] The Plaintiffs also argue that they should be entitled to take discovery on the Defendant's state of mind as specifically relating to the Plaintiffs. *See* Pls.' Answering Br. in Opp'n to Def.'s Mot.

Because the Plaintiffs may not relitigate this Court's determination that the Series B Preferred Stockholders acquiesced in the incurrence of debt complained of here, the Counts of the Complaint turning on allegations that such incurrence of debt was wrongful—Counts I, II and IV—are dismissed. The parties should provide an appropriate form of order.

Sincerely,

/s/ Sam Glasscock III

Vice Chancellor

cc:    Register in Chancery

---

to Dismiss at 18–19. I have, however, already made findings with respect to the Defendant's state of mind, finding that SBS relied on the lack of objection by *any* Series B Preferred Stockholders. *See Lehman Bros. Holdings Inc. v. Spanish Broad. Sys., Inc.*, 2014 WL 718430, at *11 (Del. Ch. Feb. 25, 2014), *aff'd,* 105 A.3d 989 (Del. 2014). I thus find that no further discovery is warranted.